Thank you, Your Honor. May it please the Court, Kevin Benson, on behalf of the appellants, the OMICS Group, collectively. I'd like to reserve five minutes of my time for rebuttal. Okay, just keep an eye on the clock. We'll try to remind you. So, as the Court can see from the briefing, there's essentially three broad issues in this case. The first is the liability of the defendants for each of the FTC's claims. The second is Dr. Lee, and the third is the District Court's error in calculating that equitable monetary relief and awarding what essentially amounts, in this case, to punitive damages, which are not permitted under Section 13b of the FTC Act. Now, I'd like to touch on sort of the highlights. I know there's a lot of material on each of these topics and, of course, answering questions that the Court might have. With respect to the liability issues, one of the things that we see repeatedly in the FTC's claims are issues, disputes over what the industry standard actually is and what terms mean. And, for example, the impact factor. There's a genuine dispute of fact over what that term means, whether that is a term of art that means only and exclusively the general impact factor that was published by Thomson Reuter, or whether it means something more general than that. And, in this case, the FTC's expert asserted that it means solely that general impact factor published by Thomson Reuter. However, she conceded in her deposition that there are other publishers of that she did not use those in her own work, so she was not familiar with them and, therefore, they were outside of her expertise. Counselor, I have a question for you about that, and I'm getting feedback that nobody can hear me, so can you hear me okay? I can hear you, yes. Okay. If we were to agree with you and say that, you know, there's not enough showing on the impact factor issue, what impact would that have? I mean, because we have several sort of categories of behavior that are at issue here, you know, the peer review issue, and the impact factor, and the indexing, and so even if you were to win on one of them, that doesn't necessarily mean you would win, right? With respect to that count one, there are multiple issues that the FTC is claiming are deceptive, and so it has to prove that to win on that claim, it has to prove that these were collectively made the journal publishing practices deceptive and misleading to reasonable consumers. I want to make sure I understand your position. Are you saying, then, that if we agree with you, we'll take the issue that you decided to argue, the impact factor issue, we agree with you on that issue, then does the whole case fall apart? I think that the court needs to look at that issue, and at each of these other sub-issues as well, and you'll see similar patterns where the FTC has not met its burden, either with respect to the peer review, the editors, the impact factors, or with the indexing of the articles, and that is all under that first claim, and I think when the court looks at those together, you'll see that the FTC has not carried its burden to show that those, that the defendant's journal practicing, journal publishing representations were misleading. All right, so if that's the case, then it seems like, I mean, you've got a heavy lift to deal with the more significant issues, I'll say. I mean, the peer review issue, the evidence that's been presented there is pretty damning for your client. How do you get around that issue? Well, with respect to the peer review, the issue that the FTC pushes on this is that the defendants were not able to produce a record of every single peer review that they had ever done. They did, however, present significant evidence of at least, or at least approximately, peer review of 50 percent of the articles that were submitted, and so we're talking about well over 65,000 articles, and so the fact that there's a lack of record for every single one does not mean that peer review didn't happen. Unfortunately, it just wasn't able to be produced in this essentially no peer review was done. It's simply not the case. The evidence in the record clearly shows that peer review was done as a matter of course, and so with respect to that, I think that again this is sort of a theme that we've seen is the FTC sort of overstating the evidence that it has presented, and with respect to the conferences, which is count two from the FTC, we see this again and the FTC has presented several declarations, for example, about the conferences, but when you look at those declarations, for example, it presented two declarations from two people who attended conferences and complained that they were disorganized and speakers did not show up. Those declarations were about the same conference, and so it's one incident. It's not as if they attended two separate conferences and this was an issue, and so when you start to go through that evidence, for example, the declaration by Julia Kerwitz appears, I counted five times in the 10 documents that the FTC relies on, and again that's five declarations or five complaints by the same person about a single incident, so again this is the situation where we have a business that the defendants are doing and a very small number of complaints, and many of them are duplicative of each other, so it doesn't, it may look as if there's a lot of smoke there, but when you really look at the evidence presented, it's really not. And so with respect to the disclosure of publishing fees, this is another issue where there's a significant dispute over material fact regarding the term open access, and in, except for one email, the FTC's evidence indicates that the solicitations that OMIC sent to authors to ask them to submit a paper clearly identified the part of the journals as open access journals, and an open access journal is one that is supported by publishing fees charged to the author so that it can be distributed free of charge to readers. And in this case, the FTC's own expert discussed the open access model and stated that it was created approximately in 2002 and that it was codified by a standards group in 2003, well before OMICS was ever funded. So the open access model is a well-established, well-known model of journal publishing. Notably, the FTC's expert also stated that under the traditional publishing model, many of those journals also charge fees to authors. And so in this case, there's a significant dispute over whether a reasonable consumer receiving a solicitation to publish in what is clearly described as an open access journal would not understand that that means that publishing fees are involved. And the FTC argues that it's presented some declarations of people who state that they were surprised by the fee, that they didn't know that the fee was going to apply. But again, this is a situation where we have more than 65,000 articles being published. And I think the court said it best in the Publishers Business Services case, that's 821 F2-1205, when it said, a representation does not become false and deceptive merely because it will be an unrepresentative segment of a class of persons to whom the representation is addressed. Council, before you run out of time, could you address the monetary award? And my question on that is, under Commerce Planet, we have this two-step test. And so the FTC put in evidence that your net revenues were $50 million. And then under step two, you have to show that that's an overstatement of the unjust gains. What evidence did you put in at step two? Well, two things, Your Honor. First, we never get to step two because the FTC failed to carry its burden on step one. It relies solely on a presumption, it did not present any evidence, and its own evidence, in fact, rebuts that presumption. Specifically with regard to the conferences, it showed through an analysis of its employees, that according to the FTC, approximately 60 out of the 100 conferences it analyzed involved a misrepresentation of some kind. It then extrapolated that to a larger number to find somewhere between 49% and 69% of conferences involved in misrepresentation. If you accept that evidence is true, then what that means is up to half of the conferences did not involve any misrepresentation. Therefore, there could not be any unjust gains. Those revenues were lawfully accrued. And so the FTC's own evidence shows, rebuts that the net revenues are not equal to the unjust gains. And so it has failed to carry its burden, even on step one, even assuming this presumption applies, which it does not. And so the burden never shifted to the defendants to present any evidence. Are you arguing that the FTC failed to meet its burden at step one as to any of the other categories of conduct besides conferences? Yes, let me back up. So this is with respect only to the amounts. And so that is just one example. In that case, as I spoke about with the publishing practices, the FTC's evidence does not show that it's deceptive and misleading to state that this is an open access journal. So we would submit that all of the revenues from those submissions are not unjust gains. So I'm going to follow up on Judge Miller's question, though. Was there an alternative formula that was recommended to the district court or that you could recommend now, other than what alternative to what the FTC recommended in their formula? So the defendants did present evidence. Dr. Orser's affidavit is one of them that shows she was not confused. She was not misled by this and that she was satisfied with her experience. They also presented evidence that there was the combined refund and chargeback rate was approximately 1.7 percent, which is quite low considering the amount of business being done in this case. If everybody was truly misled, you would expect that number to be much, much, higher than that. And so in this case, there is evidence presented, even though the defendants were not obligated to present evidence and because the FTC never carried its burden. But because it did present evidence in any event, the district court was required to make all inferences in favor of the non-moving party, which it failed to do and did quite the opposite and granted a similar judgment to the FTC on the amount of damages. Okay, counsel, you've got just about three minutes left. Did you want to reserve? Yes, I would like to reserve the rest of my time. Thank you. Thank you, your honors, and may it please the court. Mariel Goetz for the Federal Trade Commission. The district court absolutely got it right here when it granted summary judgment in the commission's favor, and I'd like to just jump right in addressing your honors questions and counsel's representation, some of which are absolutely wrong, so I want to be sure to clarify that. With respect to the impact factor claims, our expert, Joyce Backus, testified that that specific term, impact factor, in this community of academic researchers refers to the specific Thompson Reuters measure of a journal's reputation. There is no evidence in the record anywhere that the term impact factor means something other than that. Dr. Gedela asserts that there are a number of other metrics that other companies use to assess similar things, but there's no evidence that any consumer in this group would have understood that term to mean something different. But as your honor, Judge Hunziker pointed out, I think she really hit the nail on the head when she said, even if the court were to be troubled by the term impact factor and whether there may be a dispute of fact, it doesn't matter here because each of the categories of false claims that the FTC has asserted independently supports the judgment here. So even if you set aside the impact factor claims, it has no effect on the verdict because under the FTC Act, all the representation that was likely to mislead a consumer acting reasonably, and we did that many times over here across several different categories of claims. I want to ask you a question about a statement you just made about all of the categories independently support the monetary award. Is that quite right? Is it because there's a difference between the journal-related revenue and the conference-related revenue? Would you agree with that? I would agree that there is a theoretical difference between the journal revenue and the conference revenue. In this case, however, the defendants never produced financial data that separated out the journal revenue from the conference revenue in any consistent or reliable way. So even if, for example, your honors wanted to make some sort of deduction to the award for a certain category of claims, for example, the conferences, there isn't even a way to do that on this record, and it's because of defendants' own failures in not coming forward with financial data that could possibly support that. I'm sorry. So I guess I'm going to jump around a little bit because I want you to address a point that plaintiffs' counsel made, and that is with regard to the conferences, have you even, I mean, how do you say that you've met your burden of showing a reasonable approximation if your own expert evidence presented was that something less than 100% of these conferences were fraudulently advertised? Yes, your honor. Let me be very clear about what that conference survey actually shows. So that survey was designed specifically to be conservative, so to be under-inclusive as far as capturing misrepresentation. So what the survey stands for is that at least 60% of the conferences being advertised contained a misrepresentation. When the survey was conducted, responses of I don't know or I don't recall were excluded, and in addition, when FTC staff was figuring out who to contact for this survey, if the email of the individual advertised in the conference advertisement was not readily available, that was not included either. So there's actually good reason to think that the true percentage of conferences that were misrepresented could be well higher than 60%. So it's a floor, not a ceiling here. And so it could be bigger. That's enough of a basis for meeting the burden of reasonable approximation. Every conference was fraudulently advertised. It is, your honor, and I want to back up and step back and look at all of the evidence that was submitted to support the conference claims because opposing counsel makes it seem like there was, you know, evidence about one conference that was misrepresented. That's absolutely not true. We submitted in the district court firsthand testimony from four different people who attended or relating to four different OMICS conferences in different locations and in different years from 2013, 14, 15, and 16. There were conferences in Barcelona, San Antonio, Philadelphia, and Vegas. So two of the declarants did testify about the same conference in Barcelona that they registered for and showed up to and were shocked when it completely failed to live up to the expectations that OMICS had, you know, represented to them about how many people would be in attendance and who would be speaking. So that was Mr. Srikanth Adiga and Dr. Padapova were the declarants who attended that Barcelona conference, but there was also the declaration of Julia Hurwitz about a 2014 conference in San Antonio that she registered for and paid for and later realized, you know, was a sham. And there were was also testimony from, I'm sorry, there were also evidence of other consumer complaints in the record even beyond the individual declarants, complaints that were submitted to the FTC, to the Better Businesses Bureau, etc. And then in addition, there was a declaration from someone whose name was wrongly used in connection with a conference, and that was in connection with the 2003 biology conference in Vegas, and that was Eric Everett. So it is not the case that there is only evidence that one conference was misrepresented, and that's really what the survey was designed to show, that these misrepresentations about participants in the rampant and widespread, and importantly, omics didn't come forward with any evidence to show anything else, to show that there was anyone who ever attended an omics conference and found it to live up to the way that they had advertised. And I think that's an important point to make. So they were required to have substantiation for the claims that they were to be speaking at this conference. You would expect them to have some sort of documentation of that, and nothing of the sort was produced. So there's a wide range of evidence that was submitted on the conferences. To answer your Honor's question about was this a reasonable approximation of unjust revenues from the defendant, absolutely it was. And I want to be specific amounts used from their tax returns for each year that added up to the 50 million, they admitted that those were accurate numbers. So any effort to say that that was not right, it just can't be squared with that admission. But more importantly, if you apply the two-step burden-shifting framework for calculating monetary relief that was accepted in Commerce Planet, and which this court has applied in several cases since then, and I'm thinking of the AMG case, CFPB versus Gordon, among others, these cases are very clear that the bar for what constitutes a reasonable approximation is a fairly low bar. And really, it is in cases like this, where it's a direct seller selling to consumers with no middleman, there isn't some sort of all of OMIX's business activities are encompassed by the FTC's claims here. In that situation, it is perfectly appropriate to use net revenues as the reasonable approximation. And that's what we did here. And then the burden shifts to the defendants to come forward with some sort of evidence to show that actually that overstates the amount of harm here. And that's where... I want to ask you a question about Commerce Planet. Is there a case out there that you're aware of where the court determined, let's say that there's multiple products that a company offers, a court determines that something less than all of those products have been deceptively advertised, and then goes and says, overall, we think this is a fraudulent enterprise, and therefore we're going to apply that perception to every product that the company offers. Are you following my hypothetical? I am. It doesn't describe this case because we don't have that separation here. But perhaps I could direct the court to the AMG case, which is one where the FTC, when we put forward our reasonable approximation, we deducted an amount that we thought had been fairly disclosed. That was a payday lending scam. So let's ask a follow-up about that. Yes. Why shouldn't we look at the conferences as independent products? Because they're discrete events, they involve discrete presentations, unlike all of the business practices related to journals, which makes sense that you're talking about sort of overall, that's in terms of product. We'll say journals are one product, right? You publish in our journals, they're going be peer-reviewed, and they're going to be legitimate because of these indexes and all that stuff. And that's kind of a broad-based thing. But why is it not appropriate to look at conferences a little bit different? Because they are discrete events that are discreetly advertised, right? It's not like one advertising goes out for every conference you're going to do because they're separate events. Right, Your Honor. And we, the commission in the district court in discovery, asked for each conference, and the defendants simply didn't produce it. So this is exactly why multiple cases emphasize the fact that to the extent there's some sort of uncertainty in the record-keeping or in the numbers, the risk of that uncertainty is borne by the wrongdoer, the defendant, not by consumers, not by the commission. So I think that's the answer to Your Honor's question, is that it just wasn't possible based on the information that the financial data down to an individual conference level. But my second point would be that would have been their burden under the burden-shifting framework. And that is what they completely failed to do. Let me ask you a question about the net revenues again. Yes, Your Honor. About that, that you made those determinations based on the tax returns of the defendant or in front of the district court, did the appellant come up with an alternative means of determining what their net revenue should be? No, Your Honor, they did not. And to come back to your earlier question about did the defendants come forward with any sort of alternative formula, they came forward with essentially nothing. They pointed to the single declaration of Dr. Orser, which doesn't say anything about how much she paid for her article to be published or anything about money. And they made a general argument that the hypothetical group of repeat customers that may have published multiple articles with OMICS or registered for multiple conferences, but there was no actual evidence that there even was a single repeat customer in this case, much less, you know, a significant number that should be, the revenues from which should be deducted from the monetary relief award. So there was no alternative calculation put forward. This court has held time and time again in cases where this happens that it's defendant's responsibility to come forward with some sort of alternative calculation. The court talked about it in Commerce Planet, in AMG. There are others too. So I think it's a really important point and one that just underscores why the $50 million number, to the extent defendants have any objection to that, it's really because they didn't come forward to meet their burden under the two step burden shifting framework. So there was nothing offered in the district court about that. I'd just like to conclude by going through a couple of things that opposing counsel said that I want to be sure to clarify. We've talked about the impact factors, the peer review evidence. Again, the analysis of the peer review files that showed something like 50% had no review at all. I want to be very clear that that does not mean that the other 50% received substantive, rigorous peer review. In fact, there is nothing in this record, no single piece of evidence to show that any article that OMIX published actually received substantive, rigorous peer review. And that is the kind of peer review that they were claiming. They admit that that's what they were claiming. So I think when counsel said, you know, we didn't show that each and every article was peer reviewed, that's just a dramatic misrepresentation of what the evidence showed. There's no evidence to support that any sort of substantive peer review was happening anecdotally or systematically to these articles that OMIX was publishing. So I'd ask your honors to affirm the district court's grant of summary judgment and also the equitable monetary relief award. Thank you, counsel. Looks like we're just under three minutes. Thank you, your honor. First of all, with regard to the equitable monetary relief, the problem here is that there was no two-step process involved. The FTC automatically assumed that the entire net revenues were equal to unjust gains. That entirely skips its first test, first step of estimating the unjust gains. Net revenue and unjust gains are not the same thing. And their own evidence shows that. And I will point specifically to volume two of the EOR page 181 and 182. That is the FTC's affidavit of their employee who was able to break out the revenue from the conferences versus the journal publishing. So there is in the record the FTC's own evidence that rebutts any presumption, which is wrong by the way, but even if it were correct, rebutts any presumption that the net revenues are equal to the unjust gains. And so again, the burden never shifted to the defendants to come up with something else. Of course, they don't dispute what their net revenues are. They dispute, however, that those net revenues are not unjust gains. And FTC's own evidence demonstrates that they are. So that is why one of the things we're requesting this court to do is to clarify the proper application of this burden shifting test. The district court at the FTC's urging conflated two completely different tests. It took the test that is only intended to create a presumption of the fact that somebody was injured and therefore that monetary relief is even an available remedy and conflated that with a separate test, which is designed to determine the amount of that monetary relief. And because of that, the district court applied an incorrect legal standard and abused its discretion, and this must be reversed in any event. But with respect to the evidence on the other issues, I did not mean to represent that there was only one conference that issued, but as the FTC said, they presented evidence of four conferences. Again, we're talking about a situation where there were many conferences, at least 1,400 or so or more that were held. And out of that, there's evidence that four of them did not live up to the standard. I would submit that that does not mean that every single conference was misrepresented and somehow fraudulent. I think it shows that indeed they're not. Similarly, with regard to the peer review, the FTC, of course, in the nature of the entity that it is, is going to see things when people complain. It doesn't see, people don't complain when they're satisfied with the product. And so all of those peer review issues where the author was satisfied with peer review is simply not going to come to their attention in any event. And so with regard to the evidence on that, again, we'd urge the court to take a very careful look at the record and evidence that the FTC actually presented in this case. I see that I'm out of time, so we request the court respectively to reverse on all points in this case. Thank you, counsel. We thank both counsel for their helpful arguments this morning. The case just argued is submitted. That concludes our calendar for the day and the court is adjourned. This court for this session stands adjourned.
judges: Miller, Hunsaker, Rayes